# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTOPHER D. RUCKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-417-FHS-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Christopher D. Rucker requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born October 29, 1963, and was forty-nine years old at the time of the administrative hearing (Tr. 37). He completed eleventh grade and later earned his GED, and has worked as a diesel mechanic, mental retardation aide, and resident care aide (Tr. 25, 39). The claimant alleges he became disabled on July 20, 2007, due to back problems, sleeping problems, and asthma (Tr. 185).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 on October 3, 2011, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 on January 6, 2012. His applications were denied. ALJ Bernard Porter conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated June 24, 2013 (Tr. 16-26). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that the claimant could only occasionally climb ramps or stairs, never climb ladders or scaffolds, and never crawl, nor

could he work around unprotected heights or moving mechanical parts, environments with temperature extremes, dust, fumes, or gases. Additionally, the ALJ determined that the claimant required a sit/stand option that allowed him to change positions at least every thirty minutes, and that, due to episodic symptomology, he would be off task for five percent of the workday and likely miss up to one day of work per month (Tr. 20). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, office helper, information clerk, and house sitter (Tr. 26).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly weigh the medical opinion evidence in the record, and (ii) failing to perform a proper credibility assessment. The undersigned Magistrate Judge agrees that the ALJ did not properly assess the medical evidence in this case, and the case should be reversed.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease of the thoracic and lumbar spine, obesity, hypertension, anxiety, and asthma (Tr. 18). The relevant medical evidence reveals that the claimant received treatment in Kansas City, Missouri prior to moving to Oklahoma. An April 12, 2009 lumbar spine MRI revealed minimal anterior subluxation L4 and L5 with severe degenerative changes, and degenerative changes thoracolumbar junction (Tr. 334). Treatment notes from the Truman Medical Center revealed that the claimant reported increased back pain on August 17, 2011, was treated and released, then returned with complaints of continued pain on August 22, 2011 (Tr. 345). On August 18, 2011, a lumbar spine MRI revealed

short pedicles and degenerative changes throughout the lumbar spine, minimal anterior subluxation L4 and L5 with severe spinal and moderate neural foraminal stenosis, moderate L3-L4 and mild L2-L3 spinal stenosis, and moderate L5-S1 neural foraminal stenosis (Tr. 330). During this treatment, the claimant reported to his physicians that his back pain was a chronic condition that was worse at times (Tr. 350).

In Oklahoma, the claimant was treated by several physicians and physician's assistants at Rowland Flatt Hugo Rural Health Clinic, including Albert McLemore, P.A. Treatment notes from the facility indicate that the claimant was treated for chronic pain affecting the lower back, and assessed with low back pain and degeneration of lumbar disc (Tr. 425-444). On November 18, 2011, the claimant was noted to have decreased range of motion in back extension (Tr. 434). Further notes from the Clinic reveal the claimant was continually treated for chronic pain affecting the low back, including prescribed pain medications (Tr. 541, 526-531). Through November 2012, on occasions where the claimant presented primarily for other ailments, *i. e.*, anxiety or hypertension, the notes appear negative for musculoskeletal problems, but also indicate that his current problems include degeneration of lumbar disc and low back pain (Tr. 541-550).

On February 13, 2013, Mr. McLemore, P.A., completed a physical Medical Source Statement (MSS) for the period from February 15, 2011 through the date he completed it, indicating that the claimant could frequently and occasionally lift/carry less than ten pounds, could stand/walk less than two hours total in an eight-hour workday and stand/walk continuously for ten minutes at a time, and that he could sit less than two hours total in an eight-hour workday and for fifteen minutes continuously (Tr. 551).

Additionally, he indicated that the claimant was required to lie down during a normal workday to manage pain but stated, "However doesn't completely relieve pain" (Tr. 552). He indicated that the claimant could never stoop, kneel, crouch, or crawl; occasionally climb, balance, reach, finger, and feel; and frequently handle (Tr. 552). He further indicated the claimant was unable to climb up heights due to pain, and stated that the claimant had pain with flexion, extension, and walking (Tr. 552). In support of his opinion, he indicated that these limitations were supported by the CT scan of the lumbar spine showing spinal stenosis L4-5 and moderate neural foraminal stenosis (Tr. 552).

On June 24, 2011, Terry L. Kilgore, M.D., conducted a consultative examination of the claimant. He assessed the claimant with back pain with sciatica, obesity, a history of drug and alcohol abuse, and asthma (Tr. 278). Additionally, he noted that the back exam revealed tenderness in the lumbosacral area with mild spasms, weak heel/toe walking due to back pain, difficulty standing on the right or left leg, and positive straight-leg raising test, in addition to a limited range of motion in almost all areas upon exam (Tr. 278-283).

State reviewing physician Dr. Karl K. Boatman completed a Physical RFC form on July 20, 2011, which he indicated was both a current evaluation and an evaluation from the claimant's date last insured of December 31, 2008 (Tr. 313-319). Dr. Boatman indicated that the claimant could perform sedentary work, with postural limitations including occasional climbing and stooping, with frequent balancing, kneeling, crouching, and crawling (Tr. 313-314). In support, Dr. Boatman referred to Dr. Kilgore's consultative exam (Tr. 313-314).

On February 16, 2012, Dr. Luther Woodcock completed a physical RFC assessment as a current evaluation. He opined that the claimant could perform the full range of light work with no limitations. (Tr. 476-484). He cited the August 2011 CT scan, and the records from the Hugo Medical Center from December 2011 through January 2012, then stated without further explanation that the claimant retained the capacity to perform light work, and that the claimant's symptoms were partially credible (Tr. 483). Dr. Woodcock also determined in a separate assessment that there was insufficient evidence to determine the claimant has a disabling physical impairment prior to his date last insured of December 31, 2008 (Tr. 484).

On May 9, 2012, Dr. Donald Baldwin completed a third physical RFC assessment as one related to the claimant's date last insured (Tr. 511-518). Citing only evidence prior to the claimant's date last insured, Dr. Boatman determined that the claimant could perform the full range of light work with no postural limitations (Tr. 512-518).

In his written opinion, the ALJ summarized the claimant's hearing testimony and much of the medical evidence. As to the state physician opinions, the ALJ noted that he could not ignore these opinions and was required to explain the weight given to them. Here, he noted the initial assessment of sedentary work with postural limitations, then Dr. Woodcock's finding of light work. He then stated that "upon reconsideration" the claimant was again capable of light work, and agreed with the assessment of light work but found further postural and environmental limitations (Tr. 23). He noted that those limitations would accommodate the claimant's breathing problems and need to alternate sitting and standing due to back pain (Tr. 23). As to Mr. McLeMore's opinion, the ALJ

stated he had carefully considered it, but determined that it was not supported by his own treatment notes and was inconsistent with the evidence as a whole and therefore entitled to little weight.

The claimant argues that the ALJ failed to properly analyze the state reviewing physician opinions in the record, in that he failed to properly explain the weight he assigned and reasons for not adopting Dr. Boatman's reviewing assessment. Social Security Ruling 96–6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996). These opinions are to be treated as medical opinions from nonexamining sources. *Id.* at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart,* 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). Here, the ALJ adopted the assessments that the claimant could perform light work, but failed to recognize that Dr. Baldwin's 2012 reviewing opinion only assessed evidence prior to December 31, 2008, and instead interpreted it as a reconsideration and approval of Dr. Woodcock's findings. He further failed to point to any evidence in the record that the claimant was capable of the lifting, standing, and walking requirements of light work despite the repeated documentation of his reduced range of motion. The government argues that the ALJ chose to "split the difference" in the opinions from the state reviewing physicians and

properly chose to rely on the more recent evidence in the record. Although that can be a valid reason for findings, here the ALJ's reliance on "more recent evidence" ignores the fact that Dr. Baldwin's opinion relates to evidence that pre-dated both Dr. Boatman's and Dr. Woodcock's.

The ALJ's error is compounded with his assessment of Mr. McLemore's MSS. Social Security regulations provide for the proper consideration of "other source" opinions such as those provided by Mr. McLemore herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" and by considering 20 C.F.R. §§ 404.1527, 416.927 factors in determining the weight of these opinions), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1, *6 (Aug. 9, 2006) (discussing considerations of evidence from sources who are not acceptable medical sources and stating that "[a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The relevant factors for evaluating opinion evidence from other sources are: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether the

claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *4-5; 20 C.F.R. §§ 404.1527(d), 416.927(d).

The ALJ stated in his written opinion that he gave Mr. McLemore's opinion little weight because: (i) he provided no treatment notes from a physician in support of his statement; (ii) although he referenced the CT scan, he did not refer the claimant to further treatment for more recent objective testing; (iii) treatment notes from one visit on October 12, 2012 (when the claimant presented with a primary complaint of itching) indicated that the claimant had normal gait, 5/5 strength, and no limb or joint pain with range of motion (Tr. 546). The ALJ further stated that, "[a]lthough the information provided may be helpful in learning more about the claimant's condition, I am not required to give significant weight to this opinion" (Tr. 24). In fact, Social Security Regulation 06-03p states, "[D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." SSR 06-03p, 2006 WL 2329939, at *5. This is especially true where, as here, the ALJ rejected these treating and examining sources in favor of at least one *nonexamining* opinion that *pre-dated* this relevant evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-

1395 (9th Cir. 1984). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984).

Accordingly, the undersigned Magistrate Judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of record. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**